1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN RICE,

        Plaintiff,

  vs.

B. CURRY, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. C 09-1496 LHK (PR)

**AMENDED** ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
AND MOTION FOR SUMMARY
JUDGMENT

(Docket No. 20)

Plaintiff[1] Steven Rice, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF").  Plaintiff alleged violations of his First Amendment free exercise rights, his Fourteenth Amendment equal protection rights, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Compl. at 11-12, 13.)  Subsequently, Plaintiff filed a motion to amend his complaint as well as a proposed amended complaint.  The Court reviewed both complaints and determined that "substantively, the claims [we]re the same."  (Aug. 30, 2012 Order at 2.)  Therefore, the Court granted Plaintiff's motion to amend the complaint, and his amended complaint was deemed the operative complaint in this action.  (*Id.*)

    Plaintiff, an avowed member of the Muslim Ansar El Mohammad ("AEM") faith, alleged that Defendants violated the civil rights of all AEM Muslims by refusing: (1) to provide a

---

[1]    In a clerical error, the Court inadvertently listed non-Defendant J. Ramsey as a defendant in the case caption.  Pursuant to Federal Rule of Civil Procedure 60(a), the Court sua sponte issues this amended order to reflect the correct caption.

1  religious morning breakfast or Suhoor[2] meal during the Holy Month of Ramadan; (2) to give

2  them access to the interfaith chapel to conduct classes according to the AEM; and (3) to hire a

3  full or part time AEM representative or  "imam."[3]  (Am. Compl. at 10.)  Plaintiff seeks monetary

4  damages and injunctive relief.

5      Plaintiff named the following Defendants: Warden B. Curry, Associate Warden W. J.

6  Hill; Correctional Business Manager P. J. Mullen; Facility Captain L. Warren; Facility Captain

7  K. J. Allen; Chief Deputy Warden C. Noll; and former Chief of Inmate Appeals N. Grannis.[4]

8      Defendants Warren and Allen were issued summonses on October 20, 2009, but no

9  confirmation of service has been received.  (Docket No. 6.)  Therefore, to date, Defendants

10  Warren and Allen have not been served in this action.

11      The remaining Defendants move for dismissal for failure to exhaust administrative

12  remedies as to Plaintiff's First Amendment claim relating to the denial of Suhoor meals.  These

13  Defendants have also moved for summary judgment on the remaining claims, arguing that there

14  is no disputed issue of material fact, that they are entitled to judgment as a matter of law, and

15  that they are entitled to qualified immunity.  Plaintiff has filed an opposition to the motion, and

16  Defendants have filed a reply.

17      The Court notes that in his opposition, Plaintiff admits that he did not properly exhaust

18  his First Amendment claim relating to the denial of Suhoor meals.  (Opp'n at 17.)

---

[2]  Suhoor meals are eaten by Muslims before sunrise during the month of Ramadan.

[3]  In his amended complaint, the Court notes that Plaintiff also claims that Defendants denied him the special meal for Eid, a Muslim holiday that marks the end of the fasting period of Ramadan.  (Am. Compl. at 10.)  However, neither party mentions this claim in their briefs.  In any event, there is no evidence in the record that Plaintiff has exhausted all available administrative remedies as to this claim.  Therefore, based on the foregoing, the Court will not address it in this Order.

[4]  In the original complaint, Plaintiff included Defendants Curry, Hill, Mullen, Warren, Allen, Noll, and Grannis in his list of named Defendants, while the amended complaint omits both Defendants Noll and Grannis.  However, in the amended complaint, Plaintiff included Defendants Noll and Grannis in his request for relief to pay $70,000 in damages.  Thus, in its August 30, 2010 Order, the Court liberally construed his amended complaint and assumed that Plaintiff intended to include Defendants Grannis and Noll in this action.

Since the time Defendants' present dispositive motion has been submitted, a recent decision from the Ninth Circuit Court of Appeals was issued that now requires *pro se* prisoner-plaintiffs to be given "notice of what is required of them in order to oppose" summary judgment motions at the time of filing of the motions. *Woods v. Carey*, 684 F.3d 934, 935, 940-41 (9th Cir. 2012). In an Order dated August 9, 2012, the Court, pursuant to *Woods* and in accordance with the holding of *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), explained to Plaintiff what he must do in order to oppose a motion for summary judgment. (Aug. 9, 2012 Order at 1-2 (citing *Woods*, 684 F.3d at 935, 940-41).) The Court then set a new briefing schedule, which directed Plaintiff to file a supplemental opposition no later than August 31, 2012, and Defendants to file a supplemental reply no later than September 7, 2012.

On August 31, 2012, Plaintiff filed his supplemental opposition. In his one-page supplemental opposition, Plaintiff again concedes that he failed to exhaust administrative remedies "on one issue of Sahoor meals for fasting in the month of December." (Supp. Opp'n at 1.) Plaintiff also "seeks to affirm all other issues in his Opposition to Defendants' Summary Judgment [Motion] . . . ." (*Id.*) Thereafter, Defendants filed their supplemental reply.

Having carefully considered the papers submitted, the Court hereby GRANTS Defendants' motion to dismiss Plaintiff's First Amendment claim relating to the denial of Suhoor meals because he concedes to the non-exhaustion of this claim, and GRANTS Defendants' motion for summary judgment on all the remaining claims as to the served Defendants as well as unserved Defendants Warren and Allen, for the reasons set out below.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

As mentioned above, Plaintiff is an avowed AEM Muslim. He claims that he has been practicing for "more than fifteen (15) years." (Rice Decl. ¶ 2.)

I.   Denial of Suhoor Meals

Plaintiff has conceded that he did not exhaust his administrative remedies as to his claim relating to the denial of Suhoor meals. Therefore, because the Court will grant Defendants'

1  motion to dismiss this claim as unexhausted, it need not include a factual background as to this

2  claim.

3  II.     Denial of Separate Access to Interfaith Chapel

4          On October 8, 2007, Plaintiff submitted a 602 inmate appeal on behalf of himself and

5  other inmates requesting "permission to have access to the interfaith chapel to conduct classes in

6  relation[] to the [AEM] teachings for a few hours a week i.e., Wednesday's; Thursday's; or

7  Friday's." (Am. Compl. at 7; Ex. A.) Plaintiff stated in his 602 appeal that AEM Muslims "are

8  being discriminated against and this has been going on for years . . . due to the fact of being

9  denied time/access in the chapel." (Am. Compl., Ex. A.)

10         On November 26, 2007, the appeal was partially granted at the first formal level of

11 review by Defendant Mullen. (Am. Compl., Ex. A-1 at 1.) Defendant Mullen noted that on

12 November 20, 2007, Muslim Chaplain Imam Tariq Ansaar Aquil met with Plaintiff to discuss the

13 group appeal. (*Id.*) In partially granting the appeal, Defendant Mullen stated:

14             The Muslim Chaplain provides a comprehensive religious program in the chapel
               that addresses the essentials for those who profess Islam as their religion (see
15             attachment).

16             Inmate Rice and the other inmates in the Muslim community are able to avail
               themselves of the existing religious resources offered in the chapel without
17             duplication of augmenting the present Islamic religious program.

18 (*Id.*) Attached to the partial grant is a document entitled, "Essentials for those who profess Islam

19 as their religion." (*Id.* at 2.) The document contains the "Articles of Faith," the "Five Pillars of

20 Islam," and a schedule of "Observances Required of all Muslims." (*Id.*) The observances

21 include the following: (1) daily - five prayers; (2) weekly - Jumah Prayer (Friday); and

22 (3) annually - Ramadan Fast, Eid ul Fitr (At the conclusion of Ramadan), and Eid ul Adha

23 (Observance of Prophet Abraham's Sacrifice at conclusion of the Hajj). (*Id.*)

24         On December 9, 2007, Plaintiff appealed the partial grant at the first level of review

25 stating that he was "not in opposition with regard to Imam Tariq Ansaar Aquil's religious

26 program . . . . However, this is not the crux of [the] appeal, which is not in dispute of the present

27 Islamic program, but to simply establish a few hours weekly in the chapel to freely practice [his]

28

1  way of life; accordingly, to the [AEM] train of thought."  (Am. Compl. at 7, A-2 at 2.)

2      On January 11, 2008, and January 14, 2008, Defendants Hill and Curry, respectively,

3  denied Plaintiff's appeal at the second level of review, stating that the AEM Muslims were

4  "afforded an opportunity to freely participate in the Islamic religious program at CTF Soledad."

5  (Am. Compl., Ex. A-3 at 2.)  They added: "All of those inmates at CTF Soledad professing Islam

6  as their faith are now and continue to be afforded full access to all necessary accommodation

7  required in the Qur'an to fulfill the core religious obligations within an institutional setting."

8  (*Id.*)

9      On January 28, 2008, Plaintiff, who was dissatisfied with the response at the second level

10  of review, appealed to the third and final level of review.  (Am. Compl., Ex. A-4.)

11     On April 26, 2008, Defendant Grannis partially granted the appeal at the third level of

12  review stating that CTF shall: "present appellant's request for separate service time in the chapel

13  for the [AEM] faith to its Religious Review Committee (RRC) pursuant to CCR 3210.  Such

14  review process does not imply any particular outcome, but ensures that the full RRC has

15  reviewed the appellant's request."  (Am. Compl., Ex. A-5.)

16     On May 14, 2008, Plaintiff wrote a letter to Defendant Curry, Defendant Noll, and the

17  RRC inquiring about whether his request for separate access to the interfaith chapel for AEM

18  Muslims had been referred to the RRC.  (Am. Compl., Ex. A-6.)  As of March 12, 2012, the date

19  Plaintiff signed his amended complaint, he claims that he was "still await[ing] an answer [to] this

20  letter."  (Am. Compl. at 8.)

21  III.   <u>Denial of AEM Imam</u>

22     On October 15, 2007, Plaintiff submitted another 602 inmate appeal relating to hiring a

23  part time or a full time AEM imam.  (Am. Compl., Ex. B, B-1.)

24     On November 26, 2007, Defendant Mullen partially granted the appeal at the first level

25  of review, stating that CTF had "hired a Muslim Chaplain [on November 5, 2007] whose

26  responsibilities, among others, are to address the spiritual and religious educational needs of the

27  inmates at CTF."  (*Id.*, Ex. B-3 (brackets added).)  Defendant Mullen added: "The Muslim

28  community is able to benefit through the existing religious resources."  (*Id.*)

1    On December 9, 2007, Plaintiff appealed to the second level of review because he was

2    dissatisfied with the partial grant at the first level of review.  (Am. Compl., Ex. B-4.)

3    On January 25, 2008, Defendants Hill and Curry denied Plaintiff's appeal at the second

4    level of review stating that CTF had hired a Muslim Chaplain and AEM Muslims were

5    "welcome to avail [them]selves of the Islamic religious services."  (Am. Compl., Ex. B-5 at 2.)

6    They added that the California Department of Corrections and Rehabilitations ("CDCR") is "not

7    budgeted to hire additional chaplains."  (*Id.*)

8    On February 5, 2008, Plaintiff again appealed to the third level of review upon finding

9    the response at the second level of review to be "inadequate and unsatisfactory."  (Am. Compl.,

10   Ex. B-7.)

11   On May 12, 2008, Defendant Grannis denied the appeal at the third level of review

12   stating: "After a review of the appeal, the appellant has failed to provide any evidence or

13   substantive information that he has been denied access to religious services."  (Am. Compl., Ex.

14   B-8.)  Defendant Grannis added that there is "an undue financial burden on the State to provide

15   funding for religious services and a representative of a given faith for every sect and at each

16   institution throughout the CDCR."  (*Id.*)  Accordingly, she concluded that "[r]elief in this matter

17   is not warranted at the [Third] Level of Review."  (*Id.*)

## MOTION TO DISMISS

18   As explained above, Defendants move for the dismissal for failure to exhaust

19   administrative remedies as to Plaintiff's First Amendment claim relating to the denial of Suhoor

20   meals.

21

22   The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

23   provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

24   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

25   facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

26   Although once within the discretion of the district court, exhaustion in prisoner cases covered by

27   § 1997e(a) is now mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  All available

28

remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Similarly, exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*, 534 U.S. at 532. PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 94 (2006).

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them the right to file appeals alleging misconduct by correctional officers/officials.  *Id.* § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal form; (3) second level appeal to the institution head or designee; and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation.  *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  *Id.* at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  However, a complaint, or in this case -- a claim -- may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." *Id.* at 1120.  Here, Plaintiff concedes he has not exhausted his administrative remedies as to his First Amendment claim relating to the denial of Suhoor meals.  (Opp'n at 17.)  Plaintiff has not presented any extraordinary circumstances which might compel that he be excused from complying with PLRA's exhaustion

1  requirement.  *Cf. Booth*, 532 U.S. at 741 n.6 (courts should not read "futility or other exceptions"

2  into § 1997e(a)).

3       Accordingly, Defendants' motion to dismiss is GRANTED, and Plaintiff's First

4  Amendment claim relating to the denial of Suhoor meals is DISMISSED without prejudice to

5  refiling this claim in a new action after exhausting California's prison administrative process.

6  *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (action must be dismissed

7  without prejudice unless prisoner exhausted available administrative remedies before he filed

8  suit, even if prisoner fully exhausts while the suit is pending).

9                          **MOTION FOR SUMMARY JUDGMENT**

10  I.    <u>Legal Standard</u>

11       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

12  that there is "no genuine issue as to any material fact and that the moving party is entitled to

13  judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect

14  the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

15  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

16  verdict for the nonmoving party. *Id.*

17       The party moving for summary judgment bears the initial burden of identifying those

18  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

19  issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

20  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

21  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

22  opposing party will have the burden of proof at trial, the moving party need only point out "that

23  there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

24       Once the moving party meets its initial burden, the nonmoving party must go beyond the

25  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

26  genuine issue for trial." Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

27  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

28

1  *Anderson*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a

2  genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

3  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

4  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

5  moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

6  II.    Evidence Considered

7        A district court may only consider admissible evidence in ruling on a motion for

8  summary judgment.  See Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th

9  Cir. 2002).      In support of Defendants' motion for summary judgment, a declaration has been

10  filed by Defendants' Attorney Virginia Papan.

11        Plaintiff verified his amended complaint filed on April 5, 2010, by signing it under

12  "penalty of perjury."  Plaintiff also verified his opposition and declaration in support of his

13  opposition on September 22, 2010, by signing both under "penalty of perjury."  Even with his

14  verified opposition and declaration, the Court can treat Plaintiff's amended complaint as an

15  affidavit in opposition to Defendants' motion for summary judgment under Rule 56 of the

16  Federal Rules of Civil Procedure.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11

17  (9th Cir. 1995).

18  III.   Legal Claims

19        A.    Free Exercise Claim

20        Plaintiff alleged that Defendants violated the First Amendment rights of all AEM

21  Muslims by refusing to grant them separate access to the interfaith chapel to conduct classes

22  according to the AEM, and denying his request to hire a full or part time AEM imam.[5]

23              1.    Legal Standard

24        The First Amendment guarantees the right to the free exercise of religion.  *Cruz v. Beto*,

25  405 U.S. 319, 323 (1972).  "The free exercise right, however, is necessarily limited by the fact of

26

27        ────────────────

28  [5] As explained above, Plaintiff's First Amendment claims relating to the denial of the Suhoor meals has been DISMISSED without prejudice.

incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests.  *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  To reach the level of a constitutional violation, "the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Id.* at 737 (internal quotation marks and citation omitted).  A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See Freeman*, 125 F.3d at 737.

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably related to legitimate penological interests.  *See O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  The burden is on the prison officials to prove that the restriction of the prisoner's exercise of religion was reasonably related to a legitimate penological objective. *See Ashelman v. Wawrzaszek,* 111 F.3d 674, 677-78 (9th Cir. 1997) (applying test from *O'Lone* and *Turner* to determine reasonableness of decision denying Jewish prisoner's request for an all-kosher diet).  In making such a determination, the district court should consider four factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and the governmental objective itself must be a legitimate and neutral one.  A second consideration is whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates.  A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources.  Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987) (citing *Turner*, 482 U.S. at 89-91).

2.   Analysis

In his amended complaint, Plaintiff alleges that Defendants have "substantially burdened [his] religious practices by denying [him] time and access to interfaith chapel for group worship

1  according to his sincerely held beliefs from the [AEM] train of thought." (Am. Compl. at 10.)

2  Plaintiff also claims that Defendants have "substantially burdened [his] religious practices by not

3  hiring adequate, or a qualified [imam or] Muslim representative from the [AEM] train of

4  thought[,] [in a] full or part time [position]." (*Id.*)

5      However, Plaintiff has not put forth admissible evidence sufficient to create a genuine

6  issue of material fact as to whether having separate access to the interfaith chapel to conduct

7  classes according to the AEM, rather than simply attending the offered Muslim services at the

8  interfaith chapel, is mandated by the AEM Muslim faith. *Cf. O'Lone*, 482 U.S. at 345 (citing to

9  record therein; finding record established prisoners' sincerely held religious beliefs compelled

10  attendance at Jumah services). In his opposition, Plaintiff makes the conclusory statement that

11  "the present Islamic program does not accommodate his train of thought." (Opp'n at 10.) He

12  does not support his statement with any evidence or offer any further explanation.

13      Nor does Plaintiff put forth admissible evidence sufficient to create a genuine issue of

14  material fact as to whether requiring Defendants to hire a full or part time AEM imam -- rather

15  than take advantage of the Muslim Chaplin who provides comprehensive religious programs in

16  the chapel -- is mandated by the AEM Muslim faith.

17      Even if there were evidence to support Plaintiff's allegations that Defendants prevented

18  him from engaging in conduct mandated by his religion, no violation of his First Amendment

19  rights can be established if the restriction was reasonably related to legitimate penological

20  objectives. *See O'Lone*, 482 U.S. at 349 (citing *Turner*, 482 U.S. at 89). As mentioned above,

21  the Supreme Court has identified four factors for district courts to consider when determining

22  whether a regulation is reasonably related to legitimate penological interests: (1) whether there is

23  a "valid, rational connection between the prison regulation and the legitimate governmental

24  interest put forward to justify it"; (2) "whether there are alternative means of exercising the right

25  that remain open to prison inmates"; (3) "the impact accommodation of the asserted

26  constitutional right will have on guards and other inmates, and on the allocation of prison

27  resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the

28  rule at issue is an "exaggerated response" to prison concerns. *Turner*, 482 U.S. at 89-90.

Amended Order Granting Defendants' Motion to Dismiss and Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Rice496msj.wpd          11

1    The task in considering the *Turner* factors is not to balance the four factors, but, rather, to

2    determine whether the state shows a "reasonable" relation between the policy and legitimate

3    penological objectives, rather than simply a "logical" one.  *Beard v. Banks*, 126 S. Ct. 2572,

4    2580  (2006).  While all justifiable inferences must be drawn in the prisoner's favor with respect

5    to matters of disputed fact, in disputed matters of professional judgment the court's inferences

6    must accord deference to the views of prison authorities.  *See id.* at 2578.  Unless a prisoner can

7    point to evidence showing the policy is not reasonably related to legitimate penological

8    objectives, sufficient to allow him to prevail on the merits, he cannot prevail at the summary

9    judgment stage.  *Id.*

10    An inmate who adheres to a minority religion must be afforded a "reasonable

11    opportunity" to exercise his religious freedom.  *See Cruz*, 405 U.S. at 322 & n.2.  This does not

12    mean, however, that every religious sect or group within a prison must have identical facilities or

13    personnel.  *See id.*  The refusal to provide an inmate who adheres to a minority religion with the

14    clergyman of his choice does not constitute a claim under the Free Exercise Clause.  *See Ward v.*

15    *Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *see also Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir.

16    1991); *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir. 1988).

17                              a.      First *Turner* Factor

18    Here, with respect to the first *Turner* factor, Defendants assert they were unable to

19    provide Plaintiff with separate access to the interfaith chapel or with an AEM imam because

20    prison regulation is to "provide for the religious and spiritual welfare of all interested inmates."

21    (MTD at 10.)  Plaintiff does not dispute the fact that CTF has already hired a Muslim Chaplain,

22    who provides a "comprehensive religious program in the chapel that addresses the essentials for

23    those who profess Islam as their religion and the religious programs of the [AEM] do not

24    significantly differ from the present Islamic religious programs available at the [CTF]."  (Reply

25    at 9.)  However, Plaintiff argues, as mentioned above, that the present Islamic program does not

26    accommodate the AEM train of thought.  He also argues that prison regulation "allows volunteer

27    religious leaders to come to CTF-Soledad, after an approval process, and also let[s] inmates

28    conduct services themselves," but that he was denied "this opportunity."  (Opp'n at 10.)  In

response, Defendants have submitted prison regulations to support their allegation that "the legitimate governmental interest is to provide for the religious and spiritual welfare of all interested inmates." (MTD at 10.) Pursuant to these relevant sections from Title 15 of the California Code of Regulations, the prison regulations at issue provide as follows:

> (1) section 3210(a): "Institution heads shall make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates, . . . . " Cal. Code Regs., tit. 15 § 3210(a).

> (2) section 3210(b): "Depending upon the number of inmates of the various faiths, chaplains may be employed or their services may be accepted on a nonpaid volunteer basis. When feasible, separate space for services of the faith groups represented by a substantial number of inmates shall be provided. However, in some facilities, . . . it shall be necessary for the various faith groups to share such space as is available for religious services." Cal. Code Regs., tit. 15 § 3210(b).

> (3) section 3210(d): "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration . . . . Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution." Cal. Code Regs., tit. 15 § 3210(d).

> (4) section 3211: "[W]hen a chaplain of a particular faith cannot be obtained to conduct services . . . the institution head may at their discretion . . . designate a qualified inmate to minister to the religious needs of inmates for that specific faith." Cal. Code Regs., tit. 15 § 3211.

Defendants claim that because they "made reasonable efforts to provide for [Plaintiff's] religious and spiritual welfare, the first *Turner* factor weighs in [their] favor." (MTD at 10.)

As to his claim of a denial of separate access to the interfaith chapel, the record shows that Plaintiff had access to the Islamic religious programs that were already being offered at the interfaith chapel. In his opposition, Plaintiff also acknowledges that his "claim regarding specific days in the interfaith chapel would require adjusting pre-existing religious programs and [he] admits it is comprehensive." (Opp'n at 10.) Furthermore, Plaintiff's request for separate service time at the interfaith chapel was referred to the RRC for consideration; however, nothing in the record shows the result of that referral. (Am. Compl. at 8, Ex. A-6.) However, because Plaintiff does not allege that his request was denied by the RRC or that any of the Defendants were part of the RRC, then none of said defendants can be held liable for failing to consider his request for separate access to the interfaith chapel. Furthermore, the Court finds that any

1    restrictions in place for use of the interfaith chapel are reasonably related to the legitimate

2    penological interests, i.e., safety of prison officials and prisoners, while at the same time not

3    impinging on Plaintiff's right to free exercise of religion because he could still benefit from the

4    existing Islamic religious programs. *See Turner*, 482 U.S. at 89.

5          As to Plaintiff's claim of a denial of his request to hire an AEM imam, the Court first

6    notes that Defendants' refusal to provide Plaintiff, who as an AEM Muslim adheres to a minority

7    religion, with the clergyman of his choice does not constitute a claim under the Free Exercise

8    Clause. *See Ward*, 1 F.3d at 880 (no affirmative duty to provide prisoner with Orthodox rabbi);

9    *see also Johnson*, 948 F.2d at 520 (no free exercise violation where prisoner did not show

10   prison's failure to provide him with Unitarian Universalist chaplain denied him "reasonable

11   opportunity" to exercise his faith); *Reimers*, 863 F.2d at 632 (no violation where prisoner denied

12   United Pentecostal pastor). Second, even if Plaintiff's request to hire an AEM imam was denied,

13   prison regulation allows institution heads to designate a "qualified inmate to minister to the

14   religious needs of inmates for that specific faith." Cal. Code Regs. tit. 15, § 3211. The record

15   also shows that Defendants did not necessarily deny Plaintiff access to an imam, but rather, their

16   failure to provide an AEM imam was due to the practical hardships and budgetary concerns with

17   hiring an AEM imam especially when there was already a Muslim Chaplain on staff. (Am.

18   Compl., Ex. B-8 at 1.) In fact, the denial at the third level of review dated May 12, 2008, states

19   that it was "an undue financial burden on the State to provide funding for religious services and a

20   representative of a given faith for every sect and at each institution throughout the CDCR."

21   (Am. Compl., Ex. B-8 at 1.) The denial also adds that one of the primary responsibilities of the

22   Muslim Chaplain is "to address the spiritual and religious educational needs of inmates at the

23   CTF . . . [and] [t]he Muslim community is able to benefit through the existing religious resources

24   available at the institution." (*Id.*) Plaintiff claims that he does not question "the veracity and

25   dignity of the recently hired Muslim chaplain imam Ansaar Aquil," and that the AEM

26   community "welcome him and uphold him in the highest admiration and [their] thanks is to

27   Allah (God) for him and sincerely ask Allah to continue to assist [Imam Aquil] in his quest to

28   uplift humanity as well as Muslim inmates . . . ." (Am. Compl., Ex. B-4 at 1.) In fact, as

1   explained above, the Muslim Chaplain met with Plaintiff on November 20, 2007, to discuss his

2   previous group appeal relating to separate access to the interfaith chapel, and Plaintiff admitted

3   that he was "not in opposition with regard to Imam Tariq Ansaar Aquil's religious program . . . ."

4   (Am. Compl., Ex. A-2 at 2.)  Therefore, nothing in the record shows that Plaintiff could not have

5   benefitted from the services provided by the Muslim Chaplain on staff.  Thus, Defendants'

6   refusal to hire an AEM imam did not deny Plaintiff all means of religious expression.

7          Further, Plaintiff has not presented admissible evidence that calls into question the valid,

8   rational connection between the aforementioned prison regulations relating to religious service

9   accommodations that require a specific time of service or a specific religious leader for each

10  sect, the legitimate security and budgetary concerns faced by prison officials, and the rational

11  relationship between refusing to grant separate access to the chapel for AEM and to hire an AEM

12  imam and addressing those concerns.  *See Anderson v. Angelone*, 123 F.3d 1197, 1198 (9th Cir.

13  1997) (holding ban on inmate-led religious activity reasonably related to legitimate security

14  concerns that inmate activities be supervised and religious groups not subvert prison authority).

15  Accordingly, the Court finds Defendants have satisfied the first element of the *Turner* test.

16                            b.  Second *Turner* Factor

17         As noted, the second *Turner* factor is "whether there are alternative means of exercising

18  the right that remain open to prison inmates."  *Turner*, 482 U.S. at 89-90.  In *O'Lone*, the

19  Supreme Court upheld a prison regulation that precluded prisoners from returning mid-day for

20  Jumah prayer services, where those prisoners were part of a work-gang detailed on assignments

21  outside of the prison.  *See* 482 U.S. at 349.  The Supreme Court found that although there were

22  no alternative means for the prisoners to attend Jumah services, the prisoners nevertheless

23  retained their ability to participate in other Muslim religious ceremonies and practices, and that

24  such ability supported the reasonableness of the restriction.  *Id.* at 352-53.  Here, as explained

25  above, regardless of the fact that prison officials are not required to provide separate access of

26  the interfaith chapel for AEM Muslims or an AEM imam, Plaintiff was given and still possesses

27  a reasonable opportunity to use the interfaith chapel and to benefit from the services provided by

28  the Muslim Chaplain in order to freely participate in the Islamic religious programs.  *See Cruz*,

1  405 U.S. at 322 n.2.

2      Therefore, the Court finds that Defendants have satisfied the second element of the

3  *Turner* test.  Specifically, Plaintiff had "alternative means" of exercising his First Amendment

4  rights, even if he did not have separate access to a chapel or the benefit of an AEM imam,

5  because he had the ability to worship at the chapel with the Muslim Chaplain using the present

6  Islamic program.  *Turner*, 482 U.S. at 89-90; *see also Henderson v. Terhune*, 379 F.3d 709, 714

7  (9th Cir. 2004) (relevant inquiry under *Turner*'s second factor is not whether the inmate has an

8  alternative means of engaging in a particular religious practice that he or she claims is being

9  affected; rather, it is whether the inmate has been denied all means of religious expression)

10  (internal quotation marks and citations omitted).

11                          c.   Third and Fourth *Turner* Factors

12      With respect to the third *Turner* factor, the evidence before the Court shows Defendants'

13  restriction on separate access to the interfaith chapel and on hiring an AEM imam was

14  reasonable in light of the impact the accommodation of Plaintiff's asserted right to such services

15  would have on the allocation of prison resources generally.  First, Plaintiff admits in his

16  opposition that giving him separate access to the interfaith chapel would require "adjusting pre-

17  existing religious programs" and he admits it is "comprehensive."  (Opp'n at 10.)  Consequently,

18  prison officials could reasonably conclude that allowing separate access to the interfaith chapel

19  would duplicate the present Islamic religious programs already available.  Secondly, as

20  explained above, prison officials also denied Plaintiff's request to hire an AEM imam due to

21  budgetary concerns.  The CDCR has a compelling, legitimate interest in meeting their budgetary

22  constraints.  *See Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).  Furthermore, as to the fourth

23  *Turner* factor, these difficulties also make clear that there were no "obvious, easy alternatives" to

24  the policies adopted by Defendants.  *See O'Lone*, 482 U.S. at 353.  Moreover, Plaintiff fails to

25  suggest any reasonable, cost-effective alternatives to the prison official's policies relating to

26  separate access to the interfaith chapel and hiring of religious leaders for a particular sect.

27  Accordingly, the Court finds Defendants have satisfied the third and fourth elements of the

28  *Turner* test.

1  In sum, the Court finds that, even viewing the evidence in the light most favorable to

2  Plaintiff, he has failed to establish a "genuine issue for trial" concerning the violation of his First

3  Amendment right to religious freedom based on the aforementioned actions of Defendants that

4  allegedly interfered with Plaintiff's religious practices. *Celotex*, 477 U.S. at 324. Therefore,

5  Defendants are entitled to summary judgment as a matter of law in regards to this claim.

6        B.   <u>Equal Protection</u>

7            1.   <u>Legal Standard</u>

8        The Equal Protection Clause requires that an inmate who is an adherent of a minority

9  religion be afforded a "reasonable opportunity of pursuing his faith comparable to the

10  opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz*, 405

11  U.S. at 322, as long as the inmate's religious needs are balanced against the reasonable

12  penological goals of the prison, *O'Lone*, 482 U.S. at 349. The district court must consider

13  whether "the difference between the defendants' treatment of [the inmate] and their treatment of

14  [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514

15  F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied

16  rational basis review to plaintiff's claim that defendants violated equal protection clause by

17  providing only Jewish inmates with kosher meat diet and remanding claim so record could be

18  more fully developed regarding defendants' asserted penological interests).

19        An inmate "'must set forth specific facts showing a genuine issue ' as to whether he was

20  afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths"

21  and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d

22  732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85.

23        Although prisoners are entitled to equal protection, it does not follow that a prison must

24  duplicate every religious benefit it provides so that all religions are treated exactly the same. As

25  the Supreme Court explained in <u>Cruz</u>:

26          We do not suggest . . . that every religious sect or group within a prison --
        however few in number -- must have identical facilities or personnel. A special

27          chapel or place of worship need not be provided for every faith regardless of size;
        nor must a chaplain, priest, or minister be provided without regard to the extent of

28          the demand. But reasonable opportunities must be afforded to all prisoners to

1    exercise the religious freedom guaranteed by the First and Fourteenth
2    Amendments without fear of penalty.

3    405 U.S. at 322 n.2.  Application of the *Cruz* standard does not require "strict numerical

4    analysis" or "create a system of ratios or quotas."  *Thompson v. Commonwealth of Ky.*, 712 F.2d

5    1078, 1081 (6th Cir. 1983); *see also Butler-Bey v. Frey*, 811 F.2d 449, 453 (8th Cir. 1987).  It

6    does require that the prison make a good faith accommodation in light of practical

7    considerations.  *See Freeman*, 125 F.3d at 737; *Thompson*, 712 F.2d at 1082 (court should

8    scrutinize the prison officials' conduct to determine whether they deliberately discriminated

9    against the minority religion or abused their discretion in distributing the prisons' limited

10   resources).

11                2.      Analysis

12          The Court finds that Plaintiff has not established a prima facie case of discrimination

13   against his religion based on the denial of his request for separate access to the interfaith chapel

14   and for the hiring of an AEM imam.  In fact, Plaintiff has not presented any direct or indirect

15   evidence to support his equal protection claim against Defendants.  Rather, he makes a

16   conclusory allegation that Defendants denied him the aforementioned religious accommodations

17   while allegedly treating him differently than the inmates that practice other religions.  (Am.

18   Compl. at 11.)

19          While Plaintiff presented a cognizable claim for a violation of equal protection, the

20   aforementioned allegations alone will not survive a motion for summary judgment.  Plaintiff's

21   claim is entirely conclusory, and he has come forward with nothing to even suggest that the

22   denial was based on his religion.  His conclusory allegations and mere assertions of

23   discrimination against his religion are insufficient to overcome a motion for summary judgment.

24   Fed. R. Civ. P. 56; *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Preston v.*

25   *Heckler*, 734 F.2d 1359, 1373 (9th Cir. 1984); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th

26   Cir. 1983).  Specifically, Plaintiff's conclusory claim that Defendants denied AEM Muslims

27   separate access to the interfaith chapel "while allowing orthodox Muslims, Jewish, Christian

28   inmates time in the interfaith chapel to practice their religious practices," (Am. Compl. at 11), is

1  not enough to defeat summary judgment because, as mentioned above, Defendants need not

2  duplicate every religious benefit provided so that all religions are treated exactly the same. *See*

3  *Thompson*, 712 F.2d at 1081 (upholding grant of summary judgment on Muslim inmates' request

4  for access to chapel comparable to Christian inmates).  Neither does his conclusory claim that

5  Defendants "hire[] chaplains for other faiths, but not [AEM]'s faith," (Am. Compl. at 11), defeat

6  summary judgment because a chaplain need not be provided for every faith without regard to the

7  extent of the demand. *See Cruz*, 405 U.S. at 322 n.2.

8      Moreover, Defendants presented evidence showing various prison regulations to support

9  their allegation that "the legitimate governmental interest is to provide for the religious and

10  spiritual welfare of all interested inmates."  Cal. Code Regs., tit. 15 §§ 3210(a), 3210(b),

11  3210(d), 3211.  As stated above, Plaintiff was given access to the Islamic religious programs

12  already being offered at the interfaith chapel, and he could also benefit from the Muslim

13  Chaplain that had already been hired.  Plaintiff has not produced any evidence indicating that

14  Defendants harbored a discriminatory intent in denying him separate access to the interfaith

15  chapel or the AEM imam.  Accordingly, Plaintiff has set forth no facts showing that there is a

16  genuine issue for trial on his equal protection claim. *See* Fed. R. Civ. P. 56(e).  Plaintiff's

17  conclusory assertion that Defendants have violated the Equal Protection Clause is not enough to

18  show that Defendants have denied him a "reasonable opportunity" to pursue his faith comparable

19  to that afforded prisoners of other faiths. *See Cruz*, 405 US at 322.  The Court finds that

20  Defendants have shown that no genuine issue of material fact exists by demonstrating that "there

21  is an absence of evidence" to support Plaintiff's claim of an equal protection violation. *Celotex*,

22  477 U.S. at 325.  Therefore, Defendants are entitled to summary judgment on this First

23  Amendment claim.

24      C.    <u>RLUIPA</u>

25          1.    <u>Legal Standard</u>

26      RLUIPA provides that no state may impose a "substantial burden" on a prisoner's

27  exercise of religion unless the action or policy in question provides the least restrictive means of

28

serving a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  In order to state a claim under RLUIPA, the plaintiff bears the burden of coming forward with evidence demonstrating the state's action or policy constituted a substantial burden on his exercise of religion. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005).  The focus of this initial inquiry necessarily is on the manner in which the plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation.  *Id.* at 995.

RLUIPA does not define "substantial burden."  *See* 42 U.S.C. § 2000cc-5.  The Ninth Circuit, however, has held an action or policy constitutes a substantial burden if it constitutes a "significantly great restriction or onus on any exercise of religion, whether or not compelled by, or central to, a system of religious belief of a person, including a religious assembly or institution."  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034-35 (9th Cir. 2004) (internal quotations omitted).  As further defined by the Ninth Circuit, a substantial burden "must be more than an inconvenience"; it must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience."  *Navajo Nation v. United States Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2006) (internal quotations and citations omitted) *overruled on other grounds by* 535 F.3d 1058 (9th Cir. 2008) (en banc).

　　　　　　2.　Analysis

Defendants contend the restriction on Plaintiff's ability to have separate access to the interfaith chapel and the refusal to hire an AEM imam do not amount to a substantial burden on Plaintiff's exercise of religion.  The record shows that Plaintiff was not coerced by a law to violate his religious beliefs.  In fact, he was not prevented from practicing his Muslim faith, he was provided with ample opportunities to meet with the Muslim Chaplain, he was afforded opportunities to freely participate in the Islamic religious programs offered at the interfaith chapel, he was given full access to all necessary accommodations required in the Qur'an to fulfill his religious core obligations, and he was not penalized for attending services or participating in religious programs.  In response, Plaintiff argues that by denying him separate access to the interfaith chapel and refusing to hire an AEM imam, Defendants have violated his RLUIPA

1   rights "by favoring religious denominations over [his], as well as by disfavoring [his] religion,"

2   and "by refusing [him] a reasonable opportunity to pursue his faith comparable to the

3   opportunity accorded inmate adherents (Christians, Jews, Orthodox Muslims) of faiths other than

4   [AEM] train of thought of Islam."  (Am. Compl. at 12-13.)

5          It is undisputed Plaintiff was restricted from having separate access to the interfaith

6   chapel and denied the benefit of hiring an AEM imam.  However, Plaintiff has not shown how

7   such actions by Defendants prevented him from engaging in religious conduct.  Importantly,

8   Plaintiff was not prevented from participating in the current Islamic religious programs, and he

9   was offered the services of the Muslim Chaplain on staff.  Although congregating with other

10  AEM Muslims to perform services (which Plaintiff claims necessitated separate access to the

11  interfaith chapel) and benefitting from the hiring of an AEM imam, might be the preferred way

12  for Plaintiff to practice his faith, Plaintiff has not shown that his inability to do so resulted in a

13  "significantly great" restriction or onus on the exercise of his religion.  Despite the restrictions

14  imposed by the prison regulations mentioned above (Cal. Code Regs, tit. 15 §§ 3210(a), 3210(b),

15  3210(d), 3211) relating to having various faith groups share available space for religious services

16  and to hiring additional chaplains of particular faiths, Plaintiff retained his ability to practice his

17  faith while participating in the current Islamic religious programs offered at the interfaith chapel,

18  to benefit from seeking guidance from the Muslim Chaplain, and to engage in other religious

19  educational and counseling activities.  For these reasons, the Court finds Plaintiff has not met his

20  burden of coming forward with evidence that Defendants' actions and the aforementioned

21  relevant prison regulations constituted a substantial burden on his exercise of religion.  *See, e.g.,*

22  *Mohammad v. Beard*, 2007 WL 1439051, *10 (W.D. Pa. 2007)  (finding denial of prayer rug did

23  not constitute substantial burden on Muslim prisoner's religious beliefs where prisoner showed

24  only it was essential he pray on clean area, not that he pray on prayer rug); *Greene v. Solano*

25  *County Jail*, 2006 WL 2067056, *9 (E.D. Cal. 2006) (finding failure to provide group worship

26  services did not substantially burden prisoner's ability to exercise his religion, and effect on

27  prisoner's exercise of religion was "only incidental," where prisoner was not required to act

28

Amended Order Granting Defendants' Motion to Dismiss and Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Rice496msj.wpd                21

contrary to his religious beliefs, and alternate means remained available to prisoner to exercise his religious beliefs); *cf. Warsoldier*, (finding prison officials substantially burdened prisoner's religious practice by subjecting him to numerous punishments because he refused to cut his hair).

In sum, Plaintiff has not established that Defendants' actions and the aforementioned relevant prison regulations, substantially burdened the practice of his religion under RLUIPA. Accordingly, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

3.   Claim for Monetary Damages Under RLUIPA

Plaintiff is not entitled to recover monetary damages against Defendants sued in their official capacities under RLUIPA.  Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought.  *See Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 (1984)) (holding that states, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver); *see Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111-14 (9th Cir. 2010) (California did not waive its Eleventh Amendment immunity against RLUIPA claim for damages under either RLUIPA or the Rehabilitation Act Amendments of 1986); *see generally Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011).  Although the Ninth Circuit has not decided whether damages would be available under RLUIPA against Defendants in their individual capacities, *see Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 n.3 (9th Cir. 2011), several other circuits have determined that such damages are not available.  *See Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by Sossamon*, 131 S. Ct. 1651. Accordingly, Plaintiff's claim for monetary damages under RLUIPA are DISMISSED.

IV.   Qualified Immunity

In the alternative, Defendants contend that they are entitled to qualified immunity

1   because (1) Plaintiff has failed to show that a constitutional right was violated by Defendants,

2   and (2) it would not have been clear to a reasonable official that their conduct was unlawful in

3   the situation confronted.

4          A.    <u>Legal Standard</u>

5         The defense of qualified immunity protects "government officials . . . from liability for

6   civil damages insofar as their conduct does not violate clearly established statutory or

7   constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

8   457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine:

9   (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and

10   (2) whether such right was clearly established such that it would be clear to a reasonable officer

11   that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 129 S.

12   Ct. 808, 818 (2009).  The Court may exercise its discretion in deciding which prong to address

13   first, in light of the particular circumstances of each case.  *Id.*

14          B.    <u>Analysis</u>

15         On the facts presented herein, viewed in the light most favorable to Plaintiff, Defendants

16   prevail as a matter of law on their qualified immunity defense because the record establishes no

17   constitutional violation and no violation of his rights under RLUIPA, as explained above.  Even

18   if such violations did occur, however, Defendants could have reasonably believed their conduct

19   was lawful.  Specifically, a reasonable officer in Defendants' positions would not have been put

20   on notice that denying Plaintiff separate access to the interfaith chapel and refusing to hire an

21   AEM imam (pursuant to the aforementioned related prison regulations, including Cal. Code

22   Regs, tit. 15 §§ 3210(a), 3210(b), 3210(d), 3211) was unlawful or amounted to a RLUIPA

23   violation.  *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (officers are

24   entitled to rely on the assumption that regulations are drafted in compliance with constitutional

25   standards).  As mentioned above, regulations that allow for restrictions to be in place for use of

26   the interfaith chapel are reasonably related to the legitimate penological interests, i.e., safety of

27   prison officials and prisoners.  Meanwhile, the regulations regarding hiring imams are related to

28

1   valid budgetary concerns faced by prison officials, and because Plaintiff could benefit from the

2   guidance of the Muslim Chaplain, accommodations were in place to provide for his religious and

3   spiritual welfare.  Therefore, Defendants are entitled to qualified immunity.

4        In sum, Defendants have shown that a reasonable officer in their position could not have

5   believed that their conduct was unlawful or amounted to a RLUIPA violation.  They have met

6   their burden of proof.  Plaintiff has not shown that their behavior was unlawful from the

7   perspective of a reasonable prison official in the situations presented above.  Therefore,

8   Defendants are entitled to judgment as a matter of law based on qualified immunity.

9        Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

10  Plaintiff's claims against them.

11  V.    Claims Against Unserved Defendants Warren and Allen

12       Summary judgment may be properly entered in favor of unserved defendants where

13  (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have

14  been briefed, and (3) the plaintiff has been provided an opportunity to address the controlling

15  issues.  *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir.),

16  *cert. denied*, 516 U.S. 864 (1995) (citing, *inter alia*, *Silverton v. Department of the Treasury*, 644

17  F.2d 1341, 1345 (9th Cir.), *cert. denied*, 454 U.S. 895 (1981)).

18       For the reasons stated above as to the served Defendants' motion for summary judgment,

19  a similar result is also appropriate as to the claims against unserved Defendants Warren and

20  Allen, who have not joined the other Defendants in their motion for summary judgment.  It is

21  apparent that the claims against the unserved Defendants are subject to summary adjudication.

22  The allegations against the unserved Defendants in Plaintiff's Amended Complaint are the same

23  as those against the served Defendants.  There is no suggestion in the Amended Complaint, the

24  exhibits attached thereto, or in the briefs and exhibits filed in connection with the present

25  motions, that the analysis differs with respect to the unserved Defendants as opposed to the

26  served Defendants.  Accordingly, Defendants Warren and Allen are entitled to summary

27  judgment as a matter of law as to all claims against them.

28

**CONCLUSION**

1.      Defendants' motion to dismiss (Docket No. 20) is GRANTED, and Plaintiff's First Amendment claim relating to the denial of Suhoor meals is DISMISSED without prejudice to refiling this claim in a new action after exhausting California's prison administrative process.

2.      Defendants' motion for summary judgment (Docket No. 20) is GRANTED as to all remaining claims against the served Defendants, and also as to unserved Defendants Warren and Allen.  Judgment shall be entered in favor of all Defendants.

3.      The Clerk shall terminate all pending motions and close the file.

4.      The Clerk shall also send Plaintiff a blank civil rights complaint form and a blank *in forma pauperis* application along with his copy of this Order.  The spaces for the civil case number should be left blank on both forms because the Clerk will assign a new case number once these forms are completed and filed with the Court.  As mentioned above, Plaintiff may use these blank forms to refile his First Amendment claim relating to the denial of Suhoor meals in a new action after he has exhausted all administrative remedies as to that claim.

5.      This Order terminates Docket No. 20.

IT IS SO ORDERED.

DATED:  10/11/12

LUCY H. KOH
United States District Judge